[Cite as *Moore v. Ohio State Penitentiary*, 2010-Ohio-1411.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WARD L. MOORE, JR.

     Plaintiff

     v.

OHIO STATE PENITENTIARY, et al.

     Defendants
     Case No. 2007-09658

Judge Joseph T. Clark
Magistrate Robert C. Van Schoyck

MAGISTRATE DECISION

{¶ 1}   Pursuant to Civ.R. 53, Magistrate Robert C. Van Schoyck was appointed to conduct all proceedings necessary for decision in this matter.

{¶ 2}   Plaintiff brought this action alleging that an employee of defendant, Ohio State Penitentiary (OSP), assaulted him, and further alleging that defendant, Ohio State Highway Patrol (OSHP), was negligent in its investigation of the alleged assault. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 3}   As an initial matter, on October 13, 2009, OSP filed a motion to quash subpoenas that were issued to three of its employees, one former employee, and one inmate. OSP argues that service of the subpoenas failed inasmuch as plaintiff did not tender the appropriate witness fees to the employees and provided incorrect service addresses for both the former employee and inmate. Upon review, OSP's motion is DENIED to the extent that failure of service is not a proper basis for quashing a subpoena under Civ.R. 45(C)(3). However, the court finds that the subpoenas were not

properly served pursuant to Civ.R. 45(B) and are therefore not enforceable.

{¶ 4}   At all times relevant, plaintiff was an inmate in the custody and control of OSP pursuant to R.C. 5120.16.  This case arises out of a November 8, 2007 altercation between staff and inmates in pod A7, where plaintiff and approximately seven other inmates resided.  The altercation began at about 1:00 p.m., when Corrections Officer (CO) Ulysses Gordon conducted a "shakedown" of inmate Ernie Marshall's cell while Marshall was taking a shower.

{¶ 5}   According to Gordon, when Marshall returned from the shower he complained about the shakedown procedure and became aggressive.  Gordon and CO Megan Rice testified that as a result of Marshall's arguing with Gordon, other inmates who were socializing in a common area became agitated and began to yell in support of Marshall.  Rice radioed for assistance and several officers quickly responded to the scene.

{¶ 6}   Among the first responders was Corrections Lieutenant Glenn Booth, who testified that upon entering the pod he witnessed Marshall arguing with Gordon while several inmates stood nearby angrily shouting.  Booth stated that although officers eventually removed Marshall from the pod, the remaining inmates, particularly inmate Jerry Pleasant, continued to shout at the officers and refused to return to their cells. Booth testified that when he ordered Pleasant to stand against a wall, Pleasant threw a punch at him and, as a result, several officers attempted to subdue Pleasant.  Booth stated that a chaotic scene ensued in which officers grappled on the floor with Pleasant while inmates stood around them yelling and screaming.

{¶ 7}   Case Manager Robert Wolfe testified that while officers were attempting to subdue Pleasant, he ordered plaintiff and the other inmates to return to their cells. According to Wolfe, plaintiff was argumentative, refused to return to his cell, and stood in a threatening stance "within breathing distance" of Wolfe.  Doug Carter, who was a corrections lieutenant at the time of the incident but no longer works for OSP, testified

that he entered the pod around this time and witnessed plaintiff standing with clenched fists very near Wolfe such that he feared for Wolfe's safety. Carter stated that he ordered plaintiff to return to his cell, but that plaintiff refused. Carter testified that he therefore wrapped his arms around plaintiff, took him to the ground, and handcuffed him. Other officers then escorted plaintiff out of the pod.

{¶ 8} In contrast to Carter's and Wolfe's testimony, plaintiff stated that he remained calm throughout the incident and never threatened Wolfe, and that there was thus no need to forcibly restrain him. Plaintiff admitted, though, that he argued with officers about their treatment of Pleasant and refused several direct orders to return to his cell. Plaintiff further testified that even if the use of force was appropriate, the amount of force used was excessive to the extent that Carter "tackled" him and either Carter or another officer stepped on his neck.

{¶ 9} Plaintiff testified that as a result of the incident, he sustained injuries to his back and shoulder. Nurse Sherry Edmonson testified that she examined plaintiff for injuries and completed a medical exam report about 15 minutes after the incident ended. (Defendants' Exhibit B.) According to Edmonson, plaintiff denied suffering any pain or injury and had no visible injuries, and she quoted him in her report as saying "I'm fine." Despite Edmonson's testimony, plaintiff testified that she was not the nurse who examined him after the incident. According to plaintiff, the examination was performed by a nurse named "Edmonds," and he claims that he reported his injuries to her at that time.

{¶ 10} As a result of the incident, Carter authored a conduct report alleging that plaintiff disobeyed direct orders and committed other violations of institutional rules. (Plaintiff's Exhibit 1.) On November 15, 2007, OSP's Rules Infraction Board found plaintiff guilty of the violations alleged by Carter. (Plaintiff's Exhibit 2.) On January 3, 2008, a three-member Use-of-Force Committee that was appointed to investigate the incident found that the force used upon plaintiff and other inmates was "justified and not excessive," and the warden concurred with this finding on January 15, 2008.

(Defendants' Exhibit A, Page 1.)

{¶ 11} The Ohio Administrative Code sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates. Ohio Adm.Code 5120-9-01(C) provides, in relevant part:

{¶ 12} "(2) Less-than-deadly force.   There are six general circumstances in which a staff member may use force against an inmate or third person.  A staff member may use less-than-deadly force against an inmate in the following circumstances:

{¶ 13} "(a)   Self-defense from physical attack or threat of physical harm;

{¶ 14} "(b)   Defense of another from physical attack or threat of physical attack;

{¶ 15} "(c)   When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders;

{¶ 16} "(d)   When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance;

{¶ 17} "(e)   Prevention of an escape or apprehension of an escapee; or

{¶ 18} "(f)   Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶ 19} The court has recognized that "corrections officers have a privilege to use force upon inmates under certain conditions.  * * *  However, such force must be used in the performance of official duties and cannot exceed the amount of force which is reasonably necessary under the circumstances.  * * *  Obviously 'the use of force is a reality of prison life' and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Mason v. Ohio Dept. of Rehab. & Corr.*  (1990), 62 Ohio Misc.2d 96, 101-102.  (Internal citations omitted.)

{¶ 20} The evidence adduced at trial established that the force used upon plaintiff occurred within the context of a dangerous altercation between multiple inmates and staff in a maximum security prison.  Booth testified that the incident was "one of the

worst" that he has seen in his more than ten years at OSP, and Wolfe called it a "very, very scary situation." According to the Use-of-Force Committee Report, at least 19 officers and other staff members from throughout the prison responded to the scene, and four inmates, including plaintiff, were forcibly restrained and removed from the pod. (Defendants' Exhibit A, Page 1.)

{¶ 21} Although plaintiff attempted to minimize his role in the incident, asserting that he remained calm throughout and never threatened Wolfe, he admitted that he argued with officers and disobeyed direct orders to return to his cell. Furthermore, the court finds that plaintiff's version of the incident was less credible than the accounts of Carter and Wolfe, who testified that plaintiff was defiant and stood in an aggressive stance such that it appeared he might attack Wolfe.

{¶ 22} Based upon the totality of the evidence, the court is persuaded that Carter was justified in using force to subdue plaintiff inasmuch as he disobeyed orders, contributed to the disturbance, and became aggressive toward Wolfe. The court further finds that Carter used only the amount of force that was reasonably necessary under the circumstances.

{¶ 23} Based upon the foregoing, the court finds that plaintiff failed to prove his claim of assault by a preponderance of the evidence. Furthermore, plaintiff failed to present any evidence that would support a claim for relief against OSHP. Accordingly, judgment is recommended in favor of defendants.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the*

*decision, as required by Civ.R. 53(D)(3)(b).*

 

_____
ROBERT C. VAN SCHOYCK
Magistrate

cc:

Peter E. DeMarco                              Ward L. Moore, Jr., #408-496
Stephanie D. Pestello-Sharf          Southern Ohio Correctional Facility
Assistant Attorneys General          P.O. Box 45699
150 East Gay Street, 18th Floor      Lucasville, Ohio 45699
Columbus, Ohio 43215-3130

RCV/cmd/Filed March 11, 2010/To S.C. reporter March 30, 2010